IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ARTIS T. ZACHARY, | ) | CIV. NO. 05-00013 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | JOHN E. POTTER AND UNITED |
| vs. | ) | STATES POSTAL SERVICE'S |
| | ) | MOTION FOR SUMMARY |
| JOHN E. POTTER, Postmaster | ) | JUDGMENT |
| General, and UNITED STATES | ) | |
| POSTAL SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS JOHN E. POTTER AND
THE UNITED STATES POSTAL SERVICE'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants John E. Potter, Postmaster General, and the United States Postal Service's Motion for Summary Judgment (the "Motion"). A hearing was heard on this matter on September 29, 2006. After a careful consideration of the Motion, supporting and opposing memorandum, and arguments of counsel, the Court hereby GRANTS Defendants' Motion.

**BACKGROUND**

In January, 2003, Plaintiff Artis T. Zachary applied, but was not ultimately selected, for the position of Statistical Program Specialist ("SPS") at the

Honolulu Branch of the United States Postal Service (the "USPS").  The SPS is required to oversee, monitor, and train approximately twenty-five Data Collection Technicians ("DCT"s) throughout the state.  The DCTs use six discrete sampling systems to track revenue, costs, volume, and transit time for the USPS.  Zachary did not have any DCT experience, but was employed as a mail handler with the USPS.  Zachary is African-American, and was forty-nine years old at the time.

Zachary was among six applicants who applied for the SPS position.  All six were interviewed by a three-member Promotion Review Board (the "PRB") headed by James Jenkins, a sixty-one year old African American.  The PRB submitted a list of three applicants to Dennis Oshiyama, the selecting official: Artis Zachary, Shawn Miyata, and Peter Fujishige.  Unlike Zachary, Miyata and Fujishige both had prior DCT experience.  Miyata, twenty-nine years old at the time, had nearly three years of DCT experience, while Fujishige, fifty-three years old, had more than four years of DCT experience.

After the interviews, Jenkins told Karleen Takeshita, the approving official for the SPS position, that he believed Miyata to be the strongest of the three finalists.  Meanwhile, however, Oshiyama selected Fujishige for the SPS position and submitted his name to Takeshita for approval.  Oshiyama and Jenkins did agree that Zachary was the weakest of the three finalists because of his lack of

knowledge of DCT sampling techniques. They estimated that it would take Zachary between six months and a year to obtain the DCT sampling technique knowledge necessary to effectively supervise, monitor, and train the DCT workers.

Takeshita concurred with Oshiyama and Jenkins that Zachary was the weakest of the three finalists, but decided to interview both Fujishige and Miyata to select between the two of them. After this second round of interviews, Takeshita selected Miyata for the SPS position based on his combination of DCT sampling experience and strong communication and leadership skills. On May 22, 2003, Zachary was informed that Miyata had been selected for the SPS position.

Meanwhile, before the final selection was made, Takeshita temporarily detailed Miyata to the SPS position, beginning April 1, 2003. Fujishige had also previously been detailed to the SPS position for a period of two years between 2000 and 2002. After learning of Miyata's detail to the SPS position, Zachary inquired whether he could be similarly detailed to the position. He was told that no other applicant would be detailed to the position until the final selection was made.

On September 2, 2003, Zachary filed a formal Equal Employment Opportunity ("EEO") complaint alleging race and age discrimination in the SPS

selection process. This complaint was resolved in favor of the USPS by the Equal Employment Opportunity Commission ("EEOC") on September 30, 2004.

This was not the first EEO complaint Zachary had filed. Throughout March, April, and May of 2003, Zachary had a number of confrontations with his supervisors regarding the use of his portable radio. The first of these reported incidents occurred on March 19, 2003; Zachary filled out a pre-complaint counseling report for this incident on March 24, 2003. Other disputes about the radio followed over the course of the next few months. In July, Zachary filed several EEO complaints regarding these incidents; the complaints were all dismissed by the EEOC in January, 2004.

Additionally, on December 18, 2003, Zachary's lunch bag was searched by two USPS supervisors as he was exiting the facility. Zachary filed an EEO complaint for this incident on March 1, 2004. This complaint was dismissed by the EEOC on October 24, 2004.

Zachary filed suit against Defendants John Potter, Postmaster General, and the USPS on January 7, 2005. Four claims of Zachary's Amended Complaint remain at issue: (1)"racial and age discrimination and reprisal," (2) unlawful search and seizure in violation of the Fourth Amendment, (3) intentional infliction of

emotional distress, and, (4) negligent infliction of emotional distress.[1] Defendants now seek summary judgment on these claims.

## STANDARD OF REVIEW

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary

---

[1]The parties have stipulated to the dismissal of Count V's claim of negligence and Count VII's claim of actual malice and punitive damages. (Stipulation For Partial Dismissal Re: Counts V and VII of the Amended Complaint, April 4, 2006.)

judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

## DISCUSSION

### I. RACIAL DISCRIMINATION, AGE DISCRIMINATION, AND RETALIATION

In Count II of his Amended Complaint, Zachary alleges "racial and age discrimination and reprisal" by the Defendants. Specifically, Zachary alleges three separate acts of discrimination and retaliation: (1) Defendants' failure to select him as SPS, (2) Defendants' failure to detail him to SPS, and, (3) Defendants' search of his lunch bag.[2] For each of these three separate acts, Zachary alleges race discrimination, age discrimination, and reprisal.[3]

---

[2] Zachary's Amended Complaint also alleges three additional acts of race discrimination, age discrimination, and retaliation: "informing Plaintiff that he could not listen to his portable personal radio; accusing him of smuggling something in or out of the facility in his portable radio; telling Plaintiff that his radio had to be on a certain station and if not would receive a letter of warning." (Pl.'s Second. Am. Compl. ¶ 44.) However, the parties have stipulated that the court has no jurisdiction to hear any claims arising from the use of Zachary's radio. (Stipulation For Partial Dismissal Re: Paragraphs 16-20 of the Amended Complaint, August 21, 2006.)

[3] Zachary's Amended Complaint also alleges that these actions also violated 42 U.S.C. § 1983 and the Hawaii State Constitution. These are not cognizable claims. It is undisputed that § 1983 generally does not apply to federal officers. Wheedlin v. Wheeler, 373 U.S. 647, 651 (1963). Similarly, basic principles of federalism and sovereign immunity prohibit a federal officer or federal agency from being sued in federal court for violating a state constitution.

## A.  RELEVANT LAW

Race discrimination in federal government hiring decisions is prohibited by Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 ("Title VII"), 42 U.S.C. § 2000e-16 (2000). Retaliation against an employee who has opposed such a discriminatory hiring practice is likewise forbidden by Title VII.  42 U.S.C. § 2000e-3(a).  Age discrimination in federal government hiring decisions is prohibited by the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 633(a) (2000).

Any person alleging a violation of Title VII must first exhaust his or her administrative remedies by filing a charge with the EEOC.  B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002).  Federal courts do not have jurisdiction to consider alleged discriminatory conduct not included in an EEOC charge unless the alleged conduct is "likely or reasonably related to the allegations made in the EEOC charge."  Id. *quoting* Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984).

Once properly before the court, both Title VII and ADEA claims are analyzed under the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973).  Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994). This framework follows three steps:

>The plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

Id. at 889.

A *prima facie* race discrimination or age discrimination case has been stated when a plaintiff shows that: (1) he belonged to a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006) (race discrimination); Pottenger v. Potlach Corp., 329 F.3d 740, 745 (9th Cir. 2003) (age discrimination). Adverse employment actions typically include termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review, and refusal to consider for promotion. Brooks v. City of San Mateo, 229 F.3d, 917, 928-29 (9th Cir. 2000).

A *prima facie* retaliatory discrimination case has been stated when a plaintiff shows that: (1) "he engaged in a protected activity"; (2) "he suffered an

adverse employment decision"; and, (3) a causal link existed between the protected activity and the adverse employment decision.  <u>Villiarimo v. Aloha Island Air Inc.</u>, 281 F.3d 1054, 1064 (9th Cir. 2002).  An adverse employment decision in the retaliation context is an action which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington Northern & Santa Fe Rwy. Co. v. White</u>, 126 S.Ct. 2405, 2415 (2006) (internal quotations omitted).

   Despite these differing standards for what constitutes a *prima facie* case, the standard for what constitutes pretext sufficient to avoid summary judgment is the same.  Pretext may be established with either a minimal amount of direct evidence of racial animus, or with "specific" and "substantial" circumstantial evidence that the employers reason is not credible.  <u>Goodwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1222 (9th Cir. 1998).

      B.  ALLEGED ACTS OF DISCRIMINATION

       1.  <u>Defendants' Failure to Select Zachary for SPS</u>

   Zachary alleges that Defendants' failure to select him for the SPS position was motivated by (1) race and age discrimination, and (2) retaliation.  These claims fail as a matter of law.

   First, Zachary's race discrimination and age discrimination claims do not present a triable issue of fact because Zachary is unable to show that

Defendants' legitimate nondiscriminatory reason for not selecting him is a pretext for racial or age-based animus. Initially, Zachary is able to state a *prima facie* case. He belongs to a protected class, there is at least a question of material fact as to whether he was qualified for the job, his non-selection constituted an adverse employment action, and an arguably similarly situated employee not in Zachary's protected class was selected for the position.

Defendants, however, offer a legitimate nondiscriminatory reason for not selecting Zachary. They argue that because of Zachary's lack of knowledge of DCT sampling techniques, it would be very difficult for him to perform the SPS duties without a long training period. Miyata, on the other hand, did have knowledge of DCT sampling techniques.[4]

Zachary is unable to show that Defendants' legitimate nondiscriminatory reason is merely a pretext for racial animus. While only a small amount of direct evidence of racial animus is required to show pretext, Goodwin, 150 F.3d at 1222, Zachary produces none. Instead, Zachary relies on three pieces of circumstantial evidence: Defendants' refusal to temporarily detail Zachary to the SPS position, Defendants' failure to interview Zachary a second time, and

---

[4] Defendants contention is supported by two affidavits: that of Karleen Takeshita and that of James Jenkins.

Zachary's superior management experience.  None of this circumstantial evidence, however, contradicts or casts doubt on Defendants' legitimate nondiscriminatory reason; it certainly does not rise to the level of "specific, substantial evidence," Goodwin, 150 F.3d at 1222, that is required to show pretext through circumstantial evidence.  The fact remains that Zachary did not have the sampling technique knowledge that Miyata and Fujishige had.  Zachary's race and age discrimination claims for non-selection fail as a matter of law.

      Second, Zachary's retaliation claim for Defendants' failure to select him must be dismissed because the court does not have subject matter jurisdiction to hear the claim.  In his EEO discrimination complaint of September 2, 2003, Zachary checked only the "Race," "Color" and "Age" boxes for the types of discrimination he alleged.  He did not check the "Retaliation" box.  In its decision, the EEOC addressed only race/color and age discrimination, not retaliatory discrimination.  Thus, this Court lacks subject matter jurisdiction to consider the retaliation claim, and it must be dismissed.  See B.K.B. v. Maui Police Dept., 276 F.3d at 1099; Lowe v. City of Monrovia, 775 F.2d 998, 1003-04 (9th Cir. 1985)

(affirming the dismissal of sex discrimination charge where the EEO complaint only alleged race discrimination).[5]

### 2. Defendants' Failure to Detail Zachary to the SPS Position

Zachary also alleges that Defendants' failure to detail Zachary to the SPS position constituted illegal race, age, and retaliatory discrimination. Here too Zachary is able to make out a prima facie case, but is unable to show that Defendants' legitimate nondiscriminatory reason for not detailing him to the position–that he did not possess sufficient sampling technique knowledge to do the job–is merely a pretext. Once again, Zachary presents no direct evidence of racial or age-based discriminatory animus and his circumstantial evidence remains insufficient to cast doubt on Defendants' nondiscriminatory reason.

Here too, Zachary's retaliation claim for failure to detail him must also be dismissed for lack of subject matter jurisdiction. Just as the EEO complaint did not exhaust Zachary's administrative remedies for his retaliation-based non-

---

[5]Zachary contends that there is a different exhaustion standard for retaliatory discrimination than there is for racial discrimination. In support of this principle, he cites Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). In Nealon a retaliation claim was allowed to proceed where the alleged retaliatory action occurred *after* the discriminatory action on which the plaintiff had based her EEO complaint. Here, however, the alleged act of retaliation–the non-selection–occurred simultaneously with the alleged discrimination that was the subject of the EEO complaint. Therefore, the rationale of Nealson (that a plaintiff might be understandably reluctant to file a subsequent EEO complaint where the first EEO complaint resulted in retaliation) does not apply. Zachary was *not* deterred from filing a subsequent EEO complaint, and his failure to exhaust his administrative remedies for retaliation cannot be excused.

selection claim, so it did not exhaust his administrative remedies for his retaliation-based failure to detail claim.

### 3. Defendants' Search of Zachary's Lunch Bag

Finally, Zachary alleges that Defendants' search of his lunch bag on December 18, 2003 constituted race, age, and retaliatory discrimination in violation of Title VII and the ADEA. These claims fail because Zachary cannot show that he was treated any differently than any other postal service employee. With no evidence of disparate treatment, Zachary cannot make out a prima facie case.

Defendants contend that Zachary was not singled out, but was one of several USPS employees whose bags were searched on December 18 in accordance with USPS regulations and practice. They support their position with affidavits from Brian Conant and Mark Rosenbaum, the two employees who searched Zachary's lunch bag. Both Conant and Rosenbaum recount that they searched several other employees' bags on December 18. Additionally, both Conant and Rosenbaum state that searching exiting employees' bags was a routine USPS procedure to deter theft during the busy holiday season when hundreds of temporary employees were hired. Moreover, the USPS Rules and Regulations Governing Conduct on Postal Property clearly state that "[p]urses, briefcases, and

other containers brought into, while on, or being removed from the property are subject to inspection." (Defs.' Ex. B.)

Zachary is unable to provide any evidence to contradict Defendants' position and show he was treated any differently than any other USPS employee. Federal Rule of Civil Procedure 56(e) requires that for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as *would be admissible in evidence*." F.R.C.P 56(e) (emphasis added). Although Zachary states that the union representative, Frank Villalobos, told Zachary that he had interviewed the mail handlers and that Zachary had been the only one searched, Villalobos' statement to Zachary is inadmissible hearsay and cannot be considered by the court.[6] Zachary presents no other evidence that he was the only person searched on December 18.

---

[6]Villalobos' statement is in particularly unreliable because it is double hearsay. Zachary is offering Villalobos' out of court statement for the truth of the matter asserted; Villalobos statement itself, however, offers the out of court statements of the USPS workers–that they were not searched on December 18, 2003–for the truth of what they assert.
  Neither Villalobos' statement to Zachary nor the USPS workers' statements to Villalobos are covered by any of the hearsay exceptions. Contrary to Zachary's assertion, these statements are not records of regularly conducted activity covered by F.R.E. 803(b)(6). Nor are they covered under the catch-all exception of F.R.E. 807. Zachary has not made any showing that he made any reasonable efforts to procure other evidence that would prove this same point, such as affidavits of other postal workers stating that none of them were searched on December 18, 2003. Moreover, the "general purpose of these rules," F.R.E. 807, would *not* be served by the admission of these statements, as this is precisely the type of hearsay the rules of evidence were designed to prohibit.

With no evidence of any different treatment, Zachary cannot state a prima facie case for either race or age discrimination, or for retaliation.  For the race and age discrimination claims, Zachary cannot show that anyone similarly situated, not in his class, received any more favorable treatment than him.  With respect to the retaliation claim, if other employees were similarly searched in accordance with USPS regulations, then the search of Zachary's lunch bag cannot have been an adverse employment decision because it would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination," Burlington Northern & Santa Fe Rwy. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

Thus Zachary's claims for retaliation and discrimination for the search of his lunch bag on December 18, 2003, like the retaliation and discrimination claims based on his non-selection and non-detailing, fail as a matter of law.

## II.   UNLAWFUL SEARCH AND SEIZURE

Additionally, Zachary claims that the search of his lunch bag on December 18, 2003 violated his Fourth Amendment right to privacy.  This claim also fails because even if Zachary had a subjective expectation of privacy in his lunch bag, such expectation was not reasonable.  The USPS Rules and Regulations Governing Conduct on Postal Property state that "[p]urses, briefcases, and other containers brought into, while on, or being removed from the property are subject to

15

inspection." (Defs.' Ex. B.)  Moreover, even where a USPS employee had a subjective expectation of privacy in her locker, this expectation was not reasonable. United States v. Bunkers, 521 F.2d 1217(9th Cir. 1975).  Thus, the search of Zachary's lunch bag did not violate the Fourth Amendment.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Furthermore, Zachary claims that the discriminatory and retaliatory actions of Defendants constituted the intentional infliction of emotional distress. Under Hawaii law, intentional infliction of emotional distress requires an act (1) that was intentional or reckless, (2) that was "outrageous," (3) that caused (4) "extreme emotional distress to another." Hac v. Univ. of Hawaii, 73 P.3d 46, 60-61 (Haw. 2003).  Hawaii courts narrowly define "outrageous." Nagata v. Quest Diagnostics, Inc., 303 F.Supp.2d 1121, 1128.  An abusive verbal attack by an employer directed at an employee is not outrageous conduct. Shoppe v. Gucci America, Inc., 14 P.3d 1049, 1068 (Haw. 2000).  Similarly, conduct which led to significantly higher life insurance premium payments was not outrageous. Keiter v. Penn Mutual Ins. Co., 900 F.Supp. 1339, 1349 (D. Haw. 1995).  Even firing an employee for unfair reasons is not considered outrageous conduct. Lapinad v. Pacific Oldsmobile-GMC, Inc., 679 F.Supp. 991, 996 (D. Haw. 1988).

The Defendants' alleged actions here, even if true, could not rise to the level of "outrageous" conduct.  Thus, as a matter of law, Zachary cannot prevail.

## IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Finally, Zachary alleges that these same actions of Defendants constitute the negligent infliction of emotional distress.  To state a claim for negligent infliction of emotional distress in Hawaii, "the plaintiff must be a member of the class of individuals forseeably endangered by the defendant's conduct."  Tran v. State Farm Mut. Auto. Ins. Co., 999 F.Supp. 1369, 1375-76 (D. Haw. 1998).  Where neither the plaintiff nor some other party is physically injured, "a claim cannot be asserted."  Id. at 1376.  Here, Zachary was not physically injured by Defendants' conduct, and so cannot prevail.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: October 4, 2006

Zachary v. Potter; CV 05-00013 BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.